HENRY J. and VLASTA MORAVEC, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent HENRY J. and MARLENE MORAVECK, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Moravec v. Commissioner
Dockets Nos. 3354-68, 3358-68.
United States Tax Court
T.C. Memo 1973-83; 1973 Tax Ct. Memo LEXIS 204; 32 T.C.M. (CCH) 367; T.C.M. (RIA) 73083; April 10, 1973, Filed. *204 Arthur N. Nasser, for the petitioners. Nelson E. Shafer and James F. Hanley, Jr., for the respondent. FORRESTER
MEMORANDUM FINDINGS OF FACT AND OPINION FORRESTER, Judge: In these consolidated cases respondent has determined deficiencies in petitioners' Federal income taxes for 1964 as follows: 2 Petitioners
Docket No.
Deficiency Henry J. and Vlasta Moravec, Sr.
3354-68
$ 9,906.93
Henry J. and Marlene Moravec, Jr.
3358-68
10,117.99
Because of concessions, the only issues remaining for our decision are (1) whether each set of petitioners incurred a capital loss in 1964 on the sales of their Permanent Reserve Shares in Marshall Savings and Loan Association, and (2) whether they are entitled to any capital loss in 1964 with respect to their stock in Marshall Safe Deposit Company. FINDINGS OF FACT Some of the facts have been stipulated and are incorporated herein by this reference. Petitioners Henry J. and Vlasta Moravec, Sr. (the senior Moravecs), are husband and wife who, at the time they filed their petition herein, resided in Riverside, Illinois. They filed their joint Federal income tax return for the year 1964 with the *205 district director of internal revenue, Chicago, Illinois. 3 Petitioners Henry J. and Marlene Moravec, Jr. (the junior Moravecs), are husband and wife who, at the time they filed their petition herein, resided in Lake Geneva, Wisconsin. They filed their joint Federal income tax return for the year 1964 with the district director of internal revenue, Chicago, Illinois. In September 1962, the senior Moravecs and the junior Moravecs purchased 321,536 and 321,535 Permanent Reserve Shares, respectively, of Marshall Savings and Loan Association (Marshall Savings), an Illinois corporation. These shares represented approximately 90 percent of the outstanding shares of Marshall Savings and were purchased by petitioners at a cost of one dollar per share. Also in September 1962, the senior Moravecs and the junior Moravecs each acquired 1,000 shares of Marshall Safe Deposit Company, an Illinois Corporation, at one dollar per share. In 1963 Marshall Savings received extensive unfavorable newspaper coverage because of a certain loan it had made. This publicity caused withdrawals of about $20,000,000 by its depositors, and this in turn brought the association under heavy examination *206 by the Illinois Department of Financial Institution, and the Federal Savings and Loan Insurance Commission (FSLIC). 4 In January 1964, Henry Moravec, Jr. (Henry, Jr.), met with the state supervisory authorities and was told that the Department of Financial Institution believed Marshall Savings was financially impaired. He was advised further that Marshall Savings would be closed unless petitioners severed their relationship with it and disposed of their shares. Henry, Jr., at this time was vice president and a director of Marshall Savings. In June 1964, Henry, Jr., on behalf of all of the petitioners, attempted to sell their shares in Marshall Savings to Mr. Navarroli (Navarroli) and Mr. Vevrive (Vevrive). The parties entered into a written contract which was labeled "Stock Purchase Agreement" but which, by its terms, amounted to an option. It provided that buyers would purchase the shares for $1,251,305 subject to certain conditions. Those conditions were that (First) the buyers could nullify the agreement within 14 days if, upon examination of the association's books and records, they were unable to satisfy themselves that the association could be salvaged; and (Second): *207 5 (b) That if BUYERS are satisfied that [sic] said Savings and Loan Association is salvagable, they shall formulate a policy which will require certain cooperative measures to be given them by the Federal Home Loan Bank. Said BUYERS shall earnestly attempt to secure the approval of their policy by said Federal Home Loan Bank, however, if said governmental agency should deny or refuse cooperation as asked (for example, a two year moratorium on insurance payments or interest on Federal Loans made to said Savings and Loan Association) then, and in that event, BUYERS will immediately inform the SELLERS in writing of such refusal and this agreement, at the option of the BUYERS, shall be declared null and void with all down payments and deposits, if any, made by the BUYERS shall be immediately returned to them and neither party hereto shall have any rights in the subject matter by virtue of this agreement. Pursuant to the terms of this "Stock Purchase Agreement," Navarroli and Vevrive deposited $50,000, the proposed downpayment, in escrow. Their attorney examined the records and books of Marshall Savings and recommended against purchase. Navarroli and Vevrive attempted but were *208 unable to secure written approval of the FHLB board in Washington, D. C.
Because of the FHLB's refusal to grant written approval and the unfavorable recommendation of their attorney, Navarroli and Vevrive decided not to purchase petitioners' shares. Accordingly, the escrow agreement was closed and the $50,000 deposit was returned to the buyers. Thereafter, 6 and during the summer of 1964 petitioners unsuccessfully attempted to sell their shares in Marshall Savings to others. During this entire period, the association remained under extensive state and federal examination. In September 1964, Marshall Savings received a "120-day letter" from the FSLIC. The letter stated that it was the opinion of the FSLIC that Marshall Savings was in an impaired financial condition, and advised that action would be taken against the association if this condition were not corrected within 120 days. At this time petitioners' shares in Marshall Savings were held by the Chicago City Bank as collateral for a loan. The balance due on the loan was $300,000 plus approximately $10,000 in interest. In October 1964, this bank notified petitioners that the loan would be called unless an additional *209 $300,000 in collateral was provided. When Henry, Jr., learned that the loan was about to be called by the bank, he met with Navarroli and Vevrive in Las Vegas, Nevada, in another attempt to sell them petitioners' Marshall Savings stock. Although the June 4 agreement had lapsed, Henry, Jr., and Navarroli and Vevrive 7 orally agreed to sell and buy the stock along the general lines of such agreement and on October 26, 1964, an initial payment of $300,000 was made directly to the Chicago City Bank in exchange for the shares. [1]
Petitioners were under the impression that the total sales price of the Marshall Savings shares was $1,251,305, the amount provided for in the June 4 agreement. After October 26 Henry, Jr., met on several occasions with the buyers and their attorney and demanded additional payments. They buyers not only refused to make additional payments, but threatened to institute a fraud suit against *210 petitioners if they took any action to obtain them. During this period, Henry, Jr., consulted with several attorneys regarding the bringing of a law suit for more money. On December 31, 1964, the Illinois Department of Financial Institution too custody of Marshall Savings and placed a custodian in charge of its business affairs. 8 On their respective 1964 joint Federal income tax returns, petitioners reported losses on the sales of their shares in Marshall Savings. The losses reflected on their returns from the transaction were $171,536 by the senior Moravecs, and $171,573 by the junior Moravecs. [2] In addition, the petitioners also deducted as a loss their entire bases in the Marshall Deposit stock. Respondent disallowed petitioners' claimed capital losses on the Marshall Savings stock sale, and on the Marshall Deposit shares. OPINION The first issue for *211 our decision is whether petitioners sustained a capital loss on the sale of their Marshall Savings shares in 1964. On October 26, 1964, petitioners sold their Marshall Savings shares with a combined basis of $643,071 and received an initial payment of $300,000. In their 1964 Federal joint income tax returns petitioners reported capital losses on the sales measured by the difference between their respective bases and the $150,000 each couple had received. 9 Henry, Jr.'s testimony in respect to the October 26 sale is vague, incomplete and entirely unsatisfactory. However, it does indicate that at the time of the sale, he and the buyers agreed to sell and buy the stock along the lines of the previous June 4 option which called for a total purchase price of more than $1,200,000. While the exact terms of the sale are never made clear, [3] petitioners admit in their petition that the buyers had an obligation to make further payments for the stock. The record also shows that Henry, Jr., made several demands on the buyers for additional payments and consulted his attorneys about bringing a law suit for the money. *212 Footnotes
1. The payment of $300,000 was made directly to the Chicago City Bank by the Bank of St. George in Utah, from whom Navarroli and Vevrive obtained a loan to purchase the shares. The balance of $10,000 interest due on petitioners' note was paid by the petitioners. ↩
2. While Henry, Jr., claimed a basis in Marshall Savings of $321,573, the record discloses that he and his wife purchased 321,535 share of Marshall Savings at $1 per share. Thus their basis in Marshall Savings was actually $321,535, and the claimed loss reflected on their return should have been $171,535. ↩
3. We note that if the terms of the sale had been for more than $643,071 (petitioners' combined bases), petitioners would have had a gain on their stock instead of the losses which were returned. No gain was determined by respondent, however. In their petitions filed herein, petitioners claimed that they were entitled to a capital loss in 1964 with respect to the sale of their Marshall Savings shares because "the purchases of said stock were unable to comply with the terms of the said agreement to sell, in particular, the payment of the balance due petitioners." It is obvious that a vital element of petitioners' case is missing. Whether or not a debt has become actually worthless in a particular year is a question of fact, the burden of proof resting upon the taxpayer. . The record contains absolutely no 10 evidence relating to the buyers' ability to pay. Petitioners did present evidence designed to show that the Marshall Savings shares had little or no value over and above $300,00 by the end of 1964, but this is meaningless absent a further showing of no personal liability on the buyers under the terms of the oral October contract. The record fails in this respect. We must assume, therefore, that petitioners had a valid, collectible claim against the buyers which for some unexplained reason they chose not to pursue, and Henry, Jr.'s repeated demands on the buyers for more money tend to confirm this conclusion. Therefore, we hold that petitioners have failed their burden of proof and are not entitled to a capital loss in 1964 with respect to the sale of Marshall Savings shares. The second issue for our decision is whether petitioners sustained a capital loss on their Marshall Deposit shares in 1964. The record contains no evidence that petitioner's Marshall Deposit shares were even sold in 1964, nor any evidence that such shares became worthless during that year. It discloses only that each set of petitioners acquired 1,000 shares of Marshall Deposit for $1,000 in 1962. Petitioners 11 have again failed to sustain their burden of proof and must be denied the claimed deductions on this issue. Decisions will be entered under Rule 50. ↩