**Henry J. MORAVEC and Vlasta Moravec, Petitioners-Appellants,**

v.

**COMMISSIONER OF INTERNAL REV-ENUE, Respondent-Appellee.**

**Henry J. MORAVEC and Marlene Mora-vec, Petitioners-Appellants,**

v.

**COMMISSIONER OF INTERNAL REV-ENUE, Respondent-Appellee.**

**Nos. 73-1942, 73-1943.**

United States Court of Appeals, Seventh Circuit.

Argued April 22, 1974.

Decided July 26, 1974.

Raymond J. Smith, Chicago, Ill., for petitioners-appellants.

Scott P. Crampton, Asst. Atty. Gen., William S. Estabrook, III, Atty., Tax Div., Dept. of Justice, Washington, D. C., for respondent-appellee.

Before SWYGERT, Chief Judge, HASTINGS, Senior Circuit Judge, and SPRECHER, Circuit Judge.

PER CURIAM.

The sole issue presented by these appeals is whether taxpayers sustained certain capital losses during the year 1964, thereby entitling them to claim such losses on their 1964 federal income tax returns pursuant to §§ 165(a),[1] 165 (f)[2] and 1211(b)[3] of the Internal Revenue Code of 1954.

Taxpayers-appellants are Henry J. Moravec, Sr. and Vlasta Moravec, husband and wife (the senior Moravecs), and Henry J. Moravec, Jr. and Marlene Moravec, husband and wife (the junior Moravecs). Each set of taxpayers reported the disputed losses on their respective joint income tax returns for 1964. The Commissioner's disallowance of the claimed losses was sustained by the Tax Court, 32 T.C.M. 367 (1973), and these appeals followed.

In September 1962, the senior and junior Moravecs purchased, respectively, 321,536 and 321,535 permanent reserve shares of Marshall Savings and Loan Association, an Illinois corporation. These shares represented approximately 90% of the outstanding shares of Marshall Savings and were purchased by taxpayers at a cost of one dollar per share. Each set of taxpayers also purchased at that time 1,000 shares of Mar-

shall Safe Deposit Company, an Illinois corporation, at one dollar per share.

In January 1964, taxpayers were advised by Illinois supervisory authorities that Marshall Savings was financially impaired and would be closed unless taxpayers disposed of their Marshall Sav-the buyers would purchase taxpayers' entered into a written "stock purchase agreement" (the June agreement) with William McGrath, an agent for undisclosed principals Louis Verive and Anthony Navarroli. The agreement provided that subject to certain conditions, the buyers would purchase taxpayers' Marshall Savings shares as well as 100% ownership in the Moravec Insurance Agency, an individual proprietorship located in Riverside, Illinois, at a purchase price of $1,251,305.00. The principal condition specified by the agreement was that the buyers satisfy themselves, upon examination of books and records, that Marshall Savings was salvageable. This condition was not met, and the buyers' initial deposit of $50,000 was returned to them. Upon failure of the June agreement to produce a sale, taxpayers sought other buyers for their shares, but without success.

On October 26, 1964, taxpayers once again entered into an agreement (the October agreement) with Verive and Navarroli for the sale of the Marshall Savings shares. The exact terms of this agreement are somewhat unclear and are the subject of some dispute between the parties. Its immediate effect, however, was that Verive and Navarroli paid taxpayers $300,000 and received in ex-

1. "§ 165. Losses
   (a) General rule.—There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise."

2. "(f) Capital losses.—Losses from sales or exchanges of capital assets shall be allowed only to the extent allowed in Sections 1211 and 1212."

3. "§ 1211. Limitation on capital losses
   *      *      *      *      *      *
   (b) Other taxpayers.—In the case of a taxpayer other than a corporation, losses

from sales or exchanges of capital assets shall be allowed only to the extent of the gains from such sales or exchanges, plus the taxable income of the taxpayer or $1,000, whichever is smaller. * * *" 26 U.S. C. § 1211(b) (1964). Section 1211(b) has since been amended with respect to taxable years beginning after Dec. 31, 1969. See Pub.L. 91–172, 83 Stat. 642 (1969).

change the Marshall Savings shares. The Tax Court found that the October agreement was oral and was "along the general lines of" the June agreement between the same parties.[4]

Despite repeated demands by taxpayers, no further payments beyond the initial $300,000 were ever received from Verive and Navarroli. When taxpayers threatened to sue for the balance of the purchase price, the purchasers responded by threatening to counterclaim for damages on the basis of fraud in connection with the sale. Henry Moravec, Jr. testified that his attorneys "doubted that any litigation would bear any fruit." There was testimony that a demand for payment was made as late as January 1965. At no time did the purchasers institute legal action to rescind the October agreement or to recover the initial payment of $300,000.

On December 31, 1964, the Illinois Department of Financial Institutions took custody of Marshall Savings and placed a custodian in charge of its business affairs. Shortly thereafter, a receiver for the purpose of liquidation was appointed. Litigation arising out of the Marshall Savings closing was settled in 1969 by a state court consent decree authorizing the final liquidation and dissolution of Marshall Savings.

On their 1964 federal income tax returns, taxpayers claimed losses from the sale of Marshall Savings shares equal to the difference between the amount actually received pursuant to the October agreement ($300,000) and their combined basis of $643,071.[5] In addition, they reported losses on their Marshall Safe Deposit Co. stock equal to their entire combined basis in such stock, i. e., $2,000. The senior Moravecs offset long-term capital gains amounting to $26,158.54 with their share of the Mar-

shall losses, giving them a net long-term loss in 1964 of $146,377.46 and an allowable loss from the sale or exchange of capital assets of $1,000. See Int.Rev. Code of 1954, §§ 165(f) and 1211(b), *supra*. The junior Moravecs similarly offset certain capital gains with the Marshall losses and reported an allowable loss of $1,000. The Commissioner disallowed the Marshall deductions and computed deficiencies, based in part on other alleged defects in the returns not in issue here, in the amounts of $9,906 93 and $10,117.99, respectively.

In sustaining the Commissioner's determination, the Tax Court found as a fact that the October agreement contemplated additional payments beyond the initial $300,000. Having so found, the court held that taxpayers failed to show that the purchasers, as of the end of 1964, were either not liable upon the October agreement or were financially unable to make further payments.

The Tax Court regarded the worth of the somewhat uncertain debt created by the October agreement as determinative of the question whether a capital loss from the sale was actually sustained in the year 1964. Under these circumstances, such analysis was entirely proper. The normal test under § 165 is whether there existed in the taxable year a "claim for reimbursement with respect to which there is a reasonable prospect of recovery." Treas.Reg. § 1.-165–1(d)(2)(i)(1960). Given the existence of a contract requiring further payments, as found by the Tax Court, the burden was properly upon the taxpayers to show there was a "reasonable certainty" yet in 1964 that such payments would not be received. *Cf.* Treas.Reg. § 1.165–1(d)(2)(i); Parmelee Transportation Co. v. United States, 351 F.2d 619, 628–629, 173 Ct.Cl.

---

4. Taxpayers' petitions alleged that the Marshall Safe Deposit Co. stock "was sold as part of the agreement to purchase petitioners' Marshall Savings and Loan Stock." The record is devoid of evidence establishing the sale of such stock, however.

5. The junior Moravecs' return reported a basis of $321,573.00 for their shares. The Tax Court concluded that this was erroneous inasmuch as the record revealed the actual basis to be $321,535.00.

139 (1965). This the taxpayers failed to do.[6]

We have carefully reviewed the entire record in this case and conclude that the Tax Court's factual findings and the inferences drawn therefrom are supported by the evidence and are not clearly erroneous. Commissioner v. Duberstein, 363 U.S. 278, 289–291, 80 S.Ct. 1190, 4 L.Ed. 2d 1218 (1960); Boehm v. Commissioner, 326 U.S. 287, 293, 66 S.Ct. 120, 90 L.Ed. 78 (1945).

It becomes clear that the capital loss deduction on the sale of the savings and loan stock, together with the safe deposit stock, was properly denied since it appeared that a collectible claim for further payment existed which the sellers chose not to pursue.

In light of the foregoing and upon the authority of Judge Forrester's opinion, reported at 32 T.C.M. 367 (1973), the decision of the Tax Court is affirmed.

Affirmed.

---

6. Neither the Commissioner nor taxpayers have argued that § 166 of the Code, which deals with bad debt deductions, is controlling here. Even if it were, the test for determining worthlessness under § 166 is similar to the "reasonable prospect of recovery" standard under § 165. See Treas.Reg. § 1.-166–2(b) (1959).